**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **PORFIRIO GUTIERREZ,**<br><br>           Petitioner,<br><br>    v.<br><br>**KEITH ANGLIN, Warden, Danville Correctional Center,**<br><br>           Respondent. | Case NO. 10 C 1782<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner Porfirio Gutierrez's (hereinafter, "Gutierrez") Petition for Relief by Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254. For the reasons stated below, the petition is denied.

### I. BACKGROUND

#### A. Murder of Joyce Raymond

Gutierrez is serving a 50-year sentence in the Danville Correctional Center in Illinois on a first-degree murder conviction. The evidence presented at Gutierrez's 1996 bench trial showed that on the evening of October 24, 1990, Joyce Raymond (hereinafter, "Joyce") and her then 14-year-old son Louis Raymond (hereinafter, "Louis") went to Gutierrez's apartment at 1062 W. Bryn Mawr Ave. on the North Side of Chicago, where Gutierrez discussed the possibility of Louis dealing cocaine for him. After

this meeting, Louis and Joyce went to the apartment of Louis's then 13-year-old friend Antonio Alexander (hereinafter, "Antonio"), where Louis was living at the time. After Louis told Antonio about his conversation with Gutierrez, Antonio said that he wanted to go to Gutierrez's home to talk with him. Joyce, Louis, and Antonio went to Gutierrez's apartment at approximately 2:30 a.m. on October 25. They allegedly had no weapons with them, and Joyce either was carrying a bottle or can of malt liquor in a paper bag.

After being let into Gutierrez's apartment building by the security guard, Joyce, Louis, and Antonio went to the eighth floor, and Joyce knocked on Gutierrez's door. At trial, Gutierrez testified that he had fallen asleep about 11:00 p.m., and that this knocking — which he said lasted about 15 minutes and sounded like kicking on the door — woke him up. Gutierrez told them that he was busy, and that they should come back later. Antonio then knocked at the door, and again Gutierrez told them to come back later. Gutierrez testified that this knocking made him nervous, so he went to his kitchen to get a knife. When they knocked at the door a third time, Gutierrez cracked the door open, pulled Antonio into the apartment, shut his door, and began to stab Antonio. Gutierrez testified that Antonio tried to hit him. Louis testified that he heard Antonio scream "don't kill me." Antonio testified that he moved toward the bathroom in the apartment. While Gutierrez testified that he was alone in his apartment, Antonio testified

that there were two men in the apartment with Gutierrez, and that one of these men helped him out of the apartment.

Once Antonio got out of the apartment, he and Louis started to run down the hall. Joyce, however, was very intoxicated, and would not leave. Both Antonio and Louis testified that Gutierrez exited his apartment brandishing a large kitchen knife, and that he wrestled Joyce to the ground and began to stab her in the stomach. Gutierrez, on the other hand, testified that Joyce — who he said he had never before seen — entered his apartment and began to swing her arms at him. He testified that he stabbed her initially in his apartment in self-defense.

Joyce was first discovered in the stairwell of the apartment building by Fernando Corona ("Corona"), a resident of the building. Corona testified that Joyce was still alive when he saw her, and that he saw Gutierrez nearby with a bloody knife in his hand. Gutierrez allegedly told Corona to call the police, as he had stabbed Joyce in self-defense after she had tried to break into his apartment. Corona testified that Gutierrez told him to let Joyce bleed to death, and that Gutierrez kicked Joyce in the stomach.

Chicago police officers John Anderson and Joe Follmer responded to a report of this stabbing. When the police arrived at 1062 W. Bryn Mawr, they discovered Joyce, apparently dead from multiple stab wounds, in the stairwell between the fifth and sixth floors of the building. The police proceeded toward the eighth

floor, and saw Gutierrez, with a fork in his hand, laying down and apparently trying to hide on a platform in the stairwell. The officers apprehended Gutierrez, at which time he confessed that he stabbed Joyce. The officers placed him under arrest.

Chicago police officers Ralph Sikorski and Daniel Kowalski were called to the crime scene. Officer Sikorski testified that the blood found in and outside of Gutierrez's apartment was consistent with the testimony of Louis and Antonio. In particular, they found blood only on the bathroom floor and around the bathroom doorway in the apartment, which was where Antonio testified he retreated after being stabbed by Gutierrez. They found blood outside of the front door of the apartment, but no blood inside the door. They also found blood in the building stairwell, on the push plate of the eighth floor stairwell door, on the wall next to the elevator door, and on the eighth floor elevator buttons.

### B. Gutierrez's Mental Health History

Gutierrez's *habeas* petition centers around his history of mental illness, and whether he was denied effective assistance of counsel due to his attorney's failure to raise his mental illness as a mitigating factor in his 1996 bench trial in the Circuit Court of Cook County. At the trial, the judge found Gutierrez guilty of first degree murder. In Illinois, however, "A person commits the offense of second degree murder when he or she commits the offense of first degree murder . . . and . . . at the time of the killing

he or she believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code [which pertain to justifiable use of force and exoneration], but his or her belief is unreasonable." 720 ILCS 5/9-2(a)(2). Two provisions in Article 7 are relevant to this case. First, 720 ILCS 5/7-1 justifies a person to use such force "only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." *Id*. at 5/7-1(a). Second, a person may use such force to defend a dwelling if "entry is made or attempted in a violent, riotous, or tumultuous manner, and he reasonably believes that such force is necessary to prevent an assault upon, or offer of personal violence to, him or another then in the dwelling." *Id*. at 5/7-2(a)(1).

The record from the post-conviction proceedings in October and November 2006 contains a detailed and voluminous history of Gutierrez's mental health history, and his conditions are also detailed in other locations in the record. Between 1981 and 1984, Gutierrez was hospitalized several times at Chicago-Read Mental Health Center and Menteno Mental Health Center, where he was diagnosed with brief reactive psychosis, atypical psychosis, and schizophrenia. He was again admitted at Chicago-Read in August 1988 for psychosis, and hospitalized in June and August 1990 at the Illinois State Psychiatric Institute, where he was diagnosed with

schizophrenic disorder, alcohol dependence, bipolar affective disorder, and manic and severe psychotic behavior. Finally, on October 1, 1990 — a little more than three weeks prior to Joyce's murder — Gutierrez was treated at the Edgewater Uptown Community Mental Health Center. Here, he reported having auditory hallucinations, and said, "I hear grunts and yelling, I hear knocking at the door." He further reported heavy alcohol use, as well as paranoid delusions that people were going to attack him on the street. He was not admitted for treatment at the center, and the intake worker did not recommend a psychiatric or psychological evaluation.

### C. Procedural History of Gutierrez's Case

Gutierrez's case has been in the Illinois state and federal court systems for more than 20 years. On November 30, 1990, he was charged with first degree murder and aggravated battery. Prior to his jury trial in the Circuit Court of Cook County, the judge ordered a behavior clinical examination of Gutierrez. He was examined by a Dr. Kishore Thampy on January 22, 1991, who filed a report with the court on February 19. The report stated that Gutierrez was mentally fit for trial with medication. Gutierrez's attorney did not ask for a fitness hearing, and the judge set the case for trial. His three-day jury trial began on June 4, 1991, and the jury found him guilty on the first degree murder charge, but not aggravated battery.

The Illinois Appellate Court First District ruled that in light of Dr. Thampy's report, which was examined in open court, the trial judge had an obligation to conduct a fitness hearing. It reversed the verdict and remanded the case for a new trial. *People v. Guttierez*, 648 N.E.2d 928, 932 (Ill. App. 1995) (the Court notes that Gutierrez's name was spelled "Guttierez" in this 1995 opinion). The Illinois Supreme Court denied the state's petition for leave to appeal the appellate court's decision. With the case back in the circuit court, the court conducted a fitness hearing on March 12, 1996. Prior to this hearing, Dr. James Corcoran and Dr. Albert Stipes examined Gutierrez. Both testified that he was fit for trial, and the court found Gutierrez fit for trial.

Gutierrez was retried in a bench trial before Judge Dennis Porter, which commenced on July 29, 1996. His attorney attempted to introduce the deposition of Dr. Rigoberto Rodriguez, who had examined Gutierrez on June 11, 1990, when Gutierrez tried to obtain Social Security disability benefits. The court excluded the deposition as evidence. Despite Gutierrez's assertion of self-defense, Judge Porter found Gutierrez guilty of first degree murder, and sentenced him to 50 years imprisonment, despite his attorney's presentation of Gutierrez's mental health history at sentencing as a mitigating factor for a lower sentence. Gutierrez's attorney next appealed directly to the appellate court

to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). The court granted the motion, and affirmed the conviction.

Acting *pro se*, Gutierrez filed a petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, asserting ineffective assistance of counsel on account of his attorney's failure to raise his mental health as part of his defense. Essentially, Gutierrez argued that his attorney should have asserted a defense that he was guilty but mentally ill. Judge Porter, who presided over the bench trial, summarily dismissed the petition without appointing counsel. The appellate court reversed the dismissal and remanded the case to the trial court, finding "defendant's allegations, taken as true, sufficient to survive the summary dismissal stage of proceedings under the Act." *People v. Gutierrez*, No. 1-99-3630, at 4 (Ill. App. July 25, 2001). The court also appointed counsel for Gutierrez.

Back in the trial court, Gutierrez's counsel filed a supplement in support of his petition. His counsel also retained Dr. Antoinette Kavanaugh, a forensic psychologist, to evaluate Gutierrez. She concluded that Gutierrez suffers from schizophrenia, subchronic, and has paranoid delusions, and that it was likely he was suffering from these thought disorders at the time of the murder. The court denied the state's motion to dismiss the petition, and ordered an evidentiary hearing. The state moved to have Gutierrez evaluated by forensic clinical services prior to

this hearing. Psychiatrist Dr. Peter Lourgos conducted this evaluation on March 9, 2006. The trial court heard the testimony of both Dr. Kavanaugh and Dr. Lourgos at the evidentiary hearing, which began on October 12, 2006. The trial court denied Gutierrez's petition on December 21, 2006.

On appeal, Gutierrez argued that the trial court violated *Strickland v. Washington*, 466 U.S. 668 (1984), by incorrectly applying the Supreme Court's reasonable probability standard. In addition, he argued that the court committed manifest error by incorrectly finding that he was guilty of first degree murder rather than second degree murder based on the evidence presented at the hearing. The appellate court affirmed the trial court's decision, and the Illinois Supreme Court denied Gutierrez's timely petition for leave to appeal on November 26, 2008.

Having not filed a Petition for Writ of Certiorari to the United States Supreme Court, Gutierrez filed a timely *habeas corpus* petition in the Southern District of Illinois on August 31, 2009. That court transferred the case here on March 16, 2010, pursuant to 28 U.S.C. §§ 1404(a) and 2241(d).

## II. **LEGAL STANDARD**

Gutierrez's Petition may be granted only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

- 9 -

States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This Court must presume the correctness of a state court's determinations of fact unless rebutted by the petitioner through clear and convincing evidence. *Id*. at § 2254(e)(1).

### III. <u>ANALYSIS</u>

Gutierrez raises one claim as grounds for § 2254 relief: ineffective assistance of counsel. To establish this claim, Gutierrez must show that (1) performance of his trial counsel fell below an objective standard of reasonableness, and (2) he was prejudiced in that, but for the alleged errors, there is a reasonable probability that the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88, 694. A failure to establish both defective performance and prejudice will doom an ineffective assistance of counsel claim. *See Velarde v. United States*, 972 F.2d 826, 828 (7th Cir. 1992). The prejudice prong requires an objective analysis, which "should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Strickland*, 466 U.S. at 695. As such, the Court does not ask whether the alleged errors establish a reasonable probability of affecting the outcome before a specific judge, but rather if the

errors establish a reasonable probability of affecting the outcome before an objectively reasonable judge. *See id*.

A federal court reviews the decision of the highest state court that adjudicated the petitioner's claims on the merits. *See United States ex rel. Russell v. Gaetz*, 628 F.Supp.2d 820, 828 (N.D. Ill. 2009). The Illinois Appellate Court First District last ruled on the merits of Gutierrez's claim for post-conviction relief, so the Court reviews its decision.

Gutierrez argues that the appellate court failed to recognize that the trial court applied a subjective standard in violation of *Strickland* in denying his petition for post-conviction relief, and that the appellate court itself applied a subjective standard in affirming the trial court. Rather than paraphrasing the appellate court's decision, the relevant portions of its opinion that could be interpreted as applying a subjective standard are as follows:

> The judge who conducted the post-conviction evidentiary hearing in this case is the same judge who presided over defendant's bench trial. We are authorized to consider that judge's "special expertise or familiarity" with the trial when we review his post-conviction petition decision for manifest error. The trial judge was in a position that allowed him to determine what the impact of evidence concerning defendant's mental condition would have been at the trial.
>
> Viewing the evidence of defendant's mental illness and the evidence presented at trial, we conclude the court did not commit manifest error when it determined defendant was not prejudiced by his attorney's failure to present evidence of his mental illness at

> trial. Even if such evidence had been presented, there is no reasonable probability the court would have found defendant had a genuine, albeit unreasonable, belief it was necessary for him to use deadly force to defend himself from [Joyce] Raymond.

*People v. Gutierrez*, No. 1-07-251, at 12–13 (Ill. App. June 9, 2008) (citations omitted). The appellate court recognized that the trial court improperly stated that Gutierrez's burden under *Strickland* was to demonstrate that "there is a reasonable probability that existed . . . for the trier of fact to conclude that the outcome of the trial would have been different had counsel asserted [the information regarding defendant's mental health]." *Id*. at 14. The appellate court, however, concluded that this imprecise recitation did not imply that the judge did not understand or apply the proper objective *Strickland* standard, as the judge "ultimately found defendant failed to establish the prejudice prong to warrant relief. . . ." *Id*.

Gutierrez argues that the appellate court failed to explain how it concluded that the trial court applied *Strickland* properly. The appellate court should have more fully enunciated the rationale behind its decision. In particular, it failed to cite to the opening of the trial court's December 21, 2006, oral opinion. Here, Judge Porter states, "[T]he Defense is correct when they assert, I believe, that it is not what I personally would do if I heard this evidence. It is what a reasonable judge would do if they heard this evidence." *People v. Gutierrez*, No. 90-27580,

Hearing Tr. 3:20-23, Dec. 21, 2006.  This statement demonstrates that the judge had a proper understanding of the objective standard in *Strickland* — although the judge does immediately proceed to give the aforementioned imprecise interpretation of the reasonable probability factor that the outcome would change due to the alleged ineffective assistance of counsel.  The appellate court forces a reader to assume that it considered this portion of the opinion in affirming the trial court.  This lack of clarity, however, does not provide grounds for § 2254 relief.

In addition, the appellate court cites the Illinois Supreme Court cases *People v. Pendleton,* 861 N.E.2d 999, 1008 (Ill. 2006), and *People v. Beaman*, 890 N.E.2d 500, 509 (Ill. 2008), as giving it the authority to defer to the trial court's expertise and familiarity with the case in reviewing whether the trial court committed manifest error in denying post-conviction relief.  Gutierrez argues that this deference established a subjective prejudice standard.

If the appellate court had ruled that the trial court's familiarity with the facts and credibility issues from the trial led it to rule that the alleged failure by counsel would not have changed *its* decision, then Gutierrez would be correct in that the appellate court's deference runs afoul of *Strickland*.  *Strickland*, 466 U.S. at 695; *see also Williams v. Allen*, 542 F.3d 1326, 1344-45 (11th Cir. 2008) ("[A] trial judge's post-hoc statements concerning

how additional evidence might have affected its ruling are not determinative for purposes of assessing prejudice."). This, however, is not what the trial court did, nor is it how the appellate court reviewed the trial court's denial of relief. Rather, the appellate court gave deference to the trial court's factual and credibility determinations, which led it to decide that no reasonable probability existed that the introduction of Gutierrez's mental health history would have changed the outcome of Gutierrez's trial. This deference complies with *Strickland*'s objective standard.

In addition, the appellate court analyzed the trial record, and made its own conclusion that the omission of Gutierrez's mental health history by his attorney did not constitute ineffective assistance of counsel. The court determined that even if this evidence had been presented, a reasonable probability did not exist that Gutierrez would not have been convicted of first degree murder. *Gutierrez*, No. 1-07-251, at 13 ("Even if such evidence had been presented, there is no reasonable probability the court would have found defendant had a genuine, albeit unreasonable, belief it was necessary for him to use deadly force to defend himself from [Joyce] Raymond."). The appellate court made its own decision that Gutierrez failed to satisfy the second prong of *Strickland*.

A key factor in this determination was the competing expert testimony of Dr. Kavanaugh and Dr. Lourgos. Dr. Kavanaugh

testified on behalf of Gutierrez, and claimed that Gutierrez was very likely suffering from "schizophrenia, paranoid type, subchronic" at the time of the murder. She based this opinion on her own personal observations, as well as a review of Gutierrez's medical records. She said that this condition could cause Gutierrez to hallucinate and have delusions that people were out to get him.

Dr. Lourgos testified that the evidence did not support Dr. Kavanaugh's assertion that Gutierrez was suffering from schizophrenia or another thought disorder at the time of the murder. He also based this opinion on a personal evaluation of Gutierrez and a review of Gutierrez's medical records. He noted that the inconsistent diagnoses of Gutierrez during his numerous hospitalizations, as well as that the hospitalizations were relatively brief, pointed to Gutierrez's disorder not being particularly severe. In addition, Dr. Lourgos observed that Gutierrez did not display symptoms of schizophrenia when incarcerated and not under the influence of drugs or alcohol. The appellate court noted that Gutierrez did not present evidence at trial that the stabbing was the result of a hallucination. Rather, Gutierrez testified that he grabbed the knife out of fear.

The appellate court found that the trial court did not commit manifest error when it weighed Dr. Kavanaugh's testimony against Dr. Lourgos's testimony, and concluded that the evidence did not

show that Gutierrez was suffering from schizophrenia or another thought disorder at the time of the murder. The court emphasized that both Dr. Kavanaugh and Dr. Lourgos testified that schizophrenic symptoms wax and wane over time, as well as that Dr. Lourgos testified that Gutierrez opening his door, despite his alleged fear of the people knocking on it, was inconsistent with schizophrenic behavior. It found that Gutierrez failed to satisfy *Strickland's* prejudice prong, as the evidence did not warrant a conviction for second degree murder rather than first degree murder. *See* 720 ILCS 5/9-2(a)(2). Therefore, he was not entitled to post-conviction relief.

The *habeas* petition now before this Court boils down to an analysis of the two expert witnesses. In reviewing the record, this Court finds that the appellate court's decision was not unreasonable in light of the competing expert testimony. The appellate court did not, as Gutierrez argues, downplay Dr. Kavanaugh's testimony and the significance of his long history of mental illness. Rather, the court examined the relevant issue of whether the evidence established that Gutierrez was suffering from schizophrenic symptoms at the time of the murder, which would have required his attorney to raise this in order to provide effective representation at trial. It was reasonable for the appellate court to find that Dr. Lourgos's testimony, combined with the other evidence presented at the post-conviction hearing, established that

there was not a reasonable probability that had Gutierrez's counsel presented this defense, a reasonable probability existed that court would have found that Gutierrez acted under a genuine, albeit unreasonable, belief that it was necessary to use deadly force to defend himself from Joyce. Therefore, a second degree murder sentence would be improper. Gutierrez did not receive ineffective assistance of counsel. Accordingly, because the appellate court properly applied the *Strickland* objective standard, and its decision was reasonable in light of the facts in the record, Gutierrez's Petition for Writ of *Habeas Corpus* is denied.

## IV. CONCLUSION

For the reasons stated herein, Gutierrez's § 2254 *Habeas Corpus* Petition is denied. Gutierrez's Request for a Certificate of Appealability is also denied.

**IT IS SO ORDERED.**

                                                        Harry D. Leinenweber, Judge
                                                        United States District Court

**DATE:** 5/9/2011